# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Rhonda Hill Wilson, Esquire <br><br> and <br><br> The Law Office of Rhonda Hill Wilson, P.C. <br><br> Plaintiffs, <br> v. <br><br> The Hartford Casualty Insurance Company <br><br> and <br><br> USI Insurance Services, LLC <br><br> Defendants. | CIVIL ACTION NO. 2:20-cv-03384 |

**BRIEF IN SUPPORT OF HARTFORD CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 2

    A. The Policy ................................................................................................................. 2

    B. Plaintiffs' Allegations ............................................................................................... 4

III. ARGUMENT .................................................................................................................... 5

    A. Governing Legal Standards For Motion To Dismiss ................................................ 5

    B. The Plain and Unambiguous Policy Terms Govern .................................................. 6

    C. The Virus Exclusion Bars Coverage for All of Plaintiffs' Claims ............................ 7

        1. Plaintiffs' Losses Are Excluded Because They Are Caused by the Coronavirus ........ 7

        2. The Virus Is a Cause of Plaintiffs' Losses, Which Necessitates the Application of the Virus Exclusion ................................................................................................................. 9

    D. Plaintiffs' Breach of Contract Claim Fails Because There is No Coverage for Plaintiffs' Claims Under the Policy ................................................................................................ 11

    E. The Claim for Declaratory Relief Also Fails .......................................................... 11

    F. The Injunctive Relief Claim for Speculative "Insurance Claims in the Future" Fails Too 12

IV. CONCLUSION ............................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*401 Fourth St., Inc. v. Inv'rs Ins. Grp.*,
    879 A.2d 166 (Pa. 2005) ................................................................................................... 6

*Alea London Ltd. v. Rudley*,
    No. Civ.A. 03-CV-1575, 2004 WL 1563002 (E.D. Pa. July 13, 2004) ................................. 8

*Baker v. Metro. Prop. & Cas. Ins. Co.*,
    No. 3:12-CV-01231, 2013 WL 5308196 (M.D. Pa. Sept. 19, 2013) ..................................... 10

*Brewer v. U.S. Fire Ins. Co.*,
    446 F. App'x 506 (3d Cir. 2011) ......................................................................................... 7

*Brodzinski v. State Farm Fire & Cas. Co.*,
    No. CV 16-6125, 2017 WL 3675399 (E.D. Pa. Aug. 25, 2017) ........................................... 10

*Buehl v. Beard*,
    54 A.3d 412 (Pa. Commw. Ct. 2012) ................................................................................ 12

*Carosella & Ferry, P.C. v. TIG Ins. Co.*,
    189 F. Supp. 2d 249 (E.D. Pa. 2001) ................................................................................. 11

*Certain Underwriters at Lloyds of London v. Creagh*,
    563 F. App'x 209 (3d Cir. 2014) ......................................................................................... 8

*Colella v. State Farm Fire & Cas. Co.*,
    407 F. App'x 616 (3d Cir. 2011) ......................................................................................... 9

*Curll v. Dairymen's Co-op. Sales Ass'n*,
    132 A.2d 271 (Pa. 1957) ................................................................................................... 12

*Gavrilides Mgmt. Co. v. Mich. Ins. Co.*,
    Case No. 20-258-CB-C30 (Mich. Circuit Court, Ingham County July 1, 2020) ................. 9

*Gelman v. State Farm Mut. Auto. Ins. Co.*,
    583 F.3d 187 (3d Cir. 2009) ............................................................................................... 5

*Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*,
    960 F.2d 377 (3d Cir.1992) ................................................................................................. 6

*Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa.
    1986) ..................................................................................................................................... 6

*Hammersmith v. TIG Ins. Co.*,
 480 F.3d 220 (3d Cir. 2007) ................................................................................................6

*Heller's Gas, Inc. v. Int'l Ins. Co. of Hannover Ltd.*,
 No. 4:15-CV-01350, 2017 WL 4119809 (M.D. Pa. Sept. 18, 2017) ......................................10

*Lambi v. Am. Mut. Ins. Co.*,
 No. 4:11-cv-906, 2012 WL 2049915 (W.D. Mo. June 6, 2012) ...............................................8

*Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge*,
 102 A.3d 501 (Pa. Super. Ct. 2014) ....................................................................................12

*Madison Const. Co. v. Harleysville Mut. Ins. Co.*,
 735 A.2d 100 (Pa. 1999) ......................................................................................................6

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*,
 137 A.3d 1247 (Pa. 2016) ..................................................................................................11

*Mount Pocono Motel Inc. v. Tuscarora Wayne Ins. Co.*,
 No. 9534 CIVIL 2013, 2014 WL 11351696 (Pa. Com. Pl. July 8, 2014) ............................6, 8

*Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*,
 320 F. Supp. 3d 636 (E.D. Pa. 2018) ...................................................................................7

*Nautilus Ins. Co. v. Shawn Owens Inc.*,
 316 F. Supp. 3d 873 (E.D. Pa. 2018) ...................................................................................7

*Neitzke v. Williams*,
 490 U.S. 319 (1989) ............................................................................................................5

*In re Old Summit Mfg., LLC*,
 523 F.3d 134 (3d Cir. 2008) ................................................................................................6

*OneBeacon Am. Ins. Co. v. Urban Outfitters, Inc.*,
 21 F. Supp. 3d 426 (E.D. Pa. 2014) ...................................................................................11

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
 998 F.2d 1192 (3d Cir. 1993) ..............................................................................................5

*Rohm & Haas Co. v. Lin*,
 992 A.2d 132 (Pa. Super. Ct. 2010) ...................................................................................12

*Sentinel Ins. Co., Ltd. v. Monarch Med Spa, Inc.*,
 105 F. Supp. 3d 464 (E.D. Pa. 2015) ...............................................................................6, 8

*Singleton v. Lavan*,
    834 A.2d 672 (Pa. Commw. Ct. 2003) ...................................................................................12

*T.H.E. Ins. Co. v. Charles Boyer Children's Tr.*,
    455 F. Supp. 2d 284 (M.D. Pa. 2006) ..................................................................................10

*United States v. Sunoco*,
    637 F. Supp. 2d 282 (E.D. Pa. 2009) .....................................................................................6

**Statutes**

42 Pa. C.S.A. § 7531 *et seq.*...........................................................................................................4

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................1, 5, 6

Local Rule 7.1 .................................................................................................................................1

Rule 12(c).........................................................................................................................................7

**Page(s)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, Defendant Hartford Casualty Insurance Company ("Hartford Casualty") respectfully move this Court to dismiss with prejudice the Complaint of Plaintiffs Rhonda Hill Wilson, Esquire and The Law Office of Rhonda Hill Wilson, P.C ("Plaintiffs").

**I.      INTRODUCTION**

Plaintiffs, a lawyer and her law firm, seek to recover for purported losses incurred when the law office was closed "as a result of the COVID or Corona Virus" (Compl. ¶ 14) and because of "a series of [governmental] orders . . . that prohibited the operation of business . . . due to the Corona virus Disease 2019 ('COVID-19') pandemic," *see* Compl. ¶ 12.[1] Plaintiffs seek for their property insurer, Hartford Casualty, to cover their virus-related losses.

Hartford Casualty does not dispute that measures to slow the spread of the novel coronavirus have upended lives and resulted in broad disruption to the economy. But the unprecedented fallout from a global pandemic does not provide a basis to override the plain terms of an insurance contract. Here, the policy includes a "Fungi", Wet Rot, Dry Rot, Bacteria and Virus exclusion that provides that the insurer "will not pay for loss or damage caused directly or indirectly by . . . Presence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus." ("Virus Exclusion"), Ex. A at 119. Further, "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss". Ex. A at 119.

COVID-19 or coronavirus is a "virus" within the meaning of this exclusion, and the business losses Plaintiffs allege were due to this virus. Indeed, Plaintiffs explicitly allege their losses were "as a result of the COVID or Corona Virus" (Compl. ¶ 14), that "COVID-19 and the

---

[1] Complaint refers to the Amended Complaint (ECF No. 4).

Pandemic have caused and continue to cause" loss or damage their property (Compl. ¶ 33), and that their business interruption was "caused by the several governmental COVID Closure Orders" (Compl ¶ 4). Simply put, the Complaint alleges Plaintiffs' losses are because of a virus – an excluded peril.

All three claims for relief are premised on the existence of coverage under the Policy. Because the Virus Exclusion bars coverage, Plaintiffs' claims fail and the Complaint should be dismissed in its entirety.

## II. STATEMENT OF FACTS

### A. The Policy

Hartford issued a Business Owner's Policy bearing No. 44 SBA TI8966 to Rhonda Hill Wilson, Esquire for the policy period of June 16, 2019, through June 16, 2020, (the "Policy") (A true and correct copy of the Policy is attached hereto as Exhibit A.) The Policy, and specifically the Special Property Coverage Form, provides that Hartford Casualty "will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." Ex. A at 27. The Policy defines "Covered Causes of Loss" as "risks of direct physical loss," unless the loss is excluded or limited in other Policy provisions. Ex. A at 28. The Policy also has an additional coverage for business income under certain terms. It provides that Hartford Casualty

> will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

Ex. A at 36. The Policy also provides "Extended Business Income" coverage in certain circumstances when there has been a "Business Income" loss. Ex. A at 37. The Extended

2

Business Income provision provides coverage from the "date property is actually repaired, rebuilt or replaced and 'operations' are resumed" to the earlier of the date "you could restore your 'operations' with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred" or "30 consecutive days". *Id*. The provision requires that "Loss of Business Income must be caused by direct physical loss or physical damage at the 'scheduled premises' caused by or resulting from a Covered Cause of Loss." *Id.*

The Policy also provides coverage for certain Extra Expenses. It provides coverage for: "reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises'. . . caused by or resulting from a Covered Cause of Loss." Ex. A at 36.

The Policy's Civil Authority additional coverage extends coverage to pay for Plaintiffs' "actual loss of Business Income" sustained during a 30-day period "when access to [their] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [their] 'scheduled premises.'" Ex. A at 37; Compl. ¶ 13.

As noted, the Policy expressly excludes losses caused by a virus. The Virus Exclusion provides:

> We will ***not pay*** for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
> \* \* \*
> ***Presence, growth, proliferation, spread or any activity of*** "fungi", wet rot, dry rot, bacteria or ***virus***.
> \* \* \*
> This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

Ex. A at 119 ("Virus Exclusion"). The Virus Exclusion has two exceptions that are not alleged to apply here.[2]

### B. Plaintiffs' Allegations

Plaintiffs seek to recover for business income losses that they allegedly sustained because of the coronavirus/COVID-19. Plaintiffs claim that they suffered losses due to the presence of the virus and because of civil authority orders in response to the virus. Plaintiffs allege "direct and actual loss … as a result of the COVID or Corona Virus and there was a Covered Cause of Loss to property under the Policy, as the Coronavirus that was proliferating onto virtually every surface and object in, on, and around" the building that houses the law office. Compl. ¶ 14. They also allege that they were "forced to close the office because of a series of orders issued by the Mayor of the City and County of Philadelphia, the Governor of the Commonwealth of Pennsylvania, the Supreme Court of Pennsylvania and the President Judge of the Philadelphia Court of Common Pleas due to the Corona virus Disease 2019 ('COVID-19') pandemic." Compl. ¶ 12.

Plaintiffs assert three claims for relief. Count I seeks a declaratory judgment under 42 Pa. C.S.A. § 7531 *et seq.* for coverage under the Business Income, Extra Expense, and Civil Authority provisions of the Policy. Count II is a breach of contract claim under the same Policy

---

[2] The two exceptions are (1) when the virus results from fire or lightning or (2) when certain limited additional coverage is applicable. The limited coverage "only applies" if, among other conditions, the virus results from certain specified causes of loss not at issue here (e.g., windstorm, hail, volcanic action) or from an equipment breakdown. For ease of reference, Hartford Casualty has submitted as Exhibit A-1 a standalone copy of the entire Limited Fungi, Bacteria or Virus Coverage form (SS 40 93 07 05) contained in the Policy, along with the definition of "specified cause of loss". Plaintiffs make a general reference to limited virus coverage, but there are no specific allegations that the limited coverage applies. *See* Compl. ¶¶ 6, 38, 52.

provisions. Count VII[3] is an injunctive relief claim requesting that Hartford Casualty be enjoined from denying coverage for Plaintiffs' coronavirus claims.

## III. ARGUMENT

### A. Governing Legal Standards For Motion To Dismiss

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009)). Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

In deciding a motion to dismiss, a "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (considering contract between parties attached to defendant's motion to dismiss). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.* Here, Plaintiffs' entire lawsuit is premised on the Policy and the Plaintiff explicitly references the Policy in the Complaint. *See, e.g.*, Compl. ¶¶ 5, 6, 13-18, 34-39, 41, 43-44, 46-50, 52-53, 55.

---

[3] The Complaint numbers the counts as I, II, and VII, but there are no counts III, IV, V, or VI.

5

Plaintiffs also attached part of the Policy to the Complaint, though they did not attach it in its entirety. The Policy in its entirety is properly considered on a Rule 12(b)(6) motion.

B.     **The Plain and Unambiguous Policy Terms Govern**

Under Pennsylvania law,[4] "[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement." *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (citing *Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Commw. Ct. 2005)); *United States v. Sunoco*, 637 F. Supp. 2d 282, 287 (E.D. Pa. 2009); *Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986). When the language of an insurance policy is clear and unambiguous, a court applying Pennsylvania law is required to give effect to that language. *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005); *see also Sentinel Ins. Co., Ltd. v. Monarch Med Spa, Inc.*, 105 F. Supp. 3d 464, 471 (E.D. Pa. 2015). Courts may not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (citing *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982)). Where, as here, an exclusion applies to bar coverage, the Court need not address coverage under other policy provisions. *Mount Pocono Motel Inc. v. Tuscarora Wayne Ins. Co*., No. 9534

---

[4] In a diversity case, the forum state's choice of law rules govern. *Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir.1992). Under Pennsylvania's choice of law rules, a contract is construed according to the law of the state with the "most significant contacts or relationship with the contract." *Hammersmith v. TIG Ins. Co*., 480 F.3d 220, 227-28 (3d Cir. 2007). The Policy was issued to Plaintiff Rhonda Hill Wilson, Esquire in Pennsylvania and provides coverage per the terms of the Policy for insured property located in Pennsylvania. Compl. ¶ 1; Ex. A at 12-13. Accordingly, Hartford assumes for purposes of this Motion that Pennsylvania law applies.

CIVIL 2013, 2014 WL 11351696, at *4 (Pa. Com. Pl. July 8, 2014) (deciding the "fungi" exclusion bars recovery for damages under either of the theories raised by the plaintiff).

Courts in this Circuit routinely grant motions to dismiss in insurance cases when the plaintiff's allegations fall squarely within the policy's exclusions to coverage. *See Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011) (affirming dismissal of complaint because the unambiguous policy exclusion applied as a matter of law); *Nautilus Ins. Co. v. Shawn Owens Inc.,* 316 F. Supp. 3d 873, 878 (E.D. Pa. 2018) (finding exclusion barred insurance coverage under policy and granting insurer's Rule 12(c) motion); *Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 320 F. Supp. 3d 636, 643 (E.D. Pa. 2018) (Savage, J.), *aff'd*, 781 F. App'x 57 (3d Cir. 2019) (granting insurer's Rule 12(c) motion because the assault and battery exclusion comprehensively barred all conduct alleged).

### C. The Virus Exclusion Bars Coverage for All of Plaintiffs' Claims

#### 1. Plaintiffs' Losses Are Excluded Because They Are Caused by the Coronavirus

The Virus Exclusion bars coverage for Plaintiffs' virus-related losses. It provides that Hartford Casualty "will not pay for loss or damage caused directly or indirectly by . . . Presence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus." Ex. A at 119. The exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" and "whether or not the loss event results in widespread damage or affects a substantial area." Ex. A at 119.

Plaintiffs' alleged losses fall squarely within the Virus Exclusion. Plaintiffs do not dispute that COVID-19, also known as coronavirus, is a virus, as the Complaint itself refers to COVID-19 as a virus numerous times. Compl. ¶ 8, 9, 10, 26, 44(2), 44(6). And Plaintiffs explicitly allege their losses are caused by the virus: "[t]here was a direct and actual loss to

7

Plaintiffs *as a result of* the COVID or Corona Virus….." Compl. ¶ 14 (emphasis added); *id.* ¶ 12 (offices closed because of "a series of orders" issued by governmental authorities "due to the Corona virus Disease 2019 ('COVID-19') pandemic"). In fact, Plaintiffs seek a declaration that "Plaintiffs sustained a direct physical loss . . . at its premises described in the Policy *as a result of* COVID-19 and/or the Pandemic." Compl. ¶ 44(1) (emphasis added). Accordingly, the Virus Exclusion precludes coverage.

The Third Circuit and this Court have upheld similarly unambiguous exclusions barring coverage for losses caused by hazardous substances or microorganisms. *See, e.g.*, *Certain Underwriters at Lloyds of London v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014) (applying microorganism exclusion to bacteria). In *Sentinel Ins. Co., Ltd. v. Monarch Med Spa, Inc.*, 105 F. Supp. 3d 464 (E.D. Pa. 2015), this Court enforced an exclusion for fungi, bacteria, and virus against claims for bacterial infections resulting from certain surgeries. *Id.* at 472 (enforcing exclusion of coverage for "[i]njury or damage arising out of or related to the presence of, suspected presence of, or exposure to fungi, bacteria and virus" based on showing that Group A Streptococcus is a bacterium); *see also Alea London Ltd. v. Rudley*, No. Civ.A. 03-CV-1575, 2004 WL 1563002, at *3 (E.D. Pa. July 13, 2004) (mold exclusion bars coverage for suit alleging mold contamination). Pennsylvania courts have also enforced similar exclusions as unambiguous. *Mount Pocono Motel Inc. v. Tuscarora Wayne Ins. Co*., No. 9534 CIVIL 2013, 2014 WL 11351696, at *4 (Pa. Com. Pl. July 8, 2014) (ruling that the "Fungi or Bacteria exclusion" was clear and unambiguous and barred claims arising from mold). Other courts are in accord. *See, e.g.*, *Lambi v. Am. Mut. Ins. Co.*, No. 4:11-cv-906, 2012 WL 2049915, at *4-5 (W.D. Mo. June 6, 2012) (communicable disease exclusion in homeowners' policy barred insurance coverage for virus claims), *aff'd*, 498 F. App'x 655 (8th Cir. 2013).

Moreover, a Michigan trial court ruling from the bench on July 1, 2020 addressed coverage for COVID-19 business income claims just like those at issue here. *Gavrilides Mgmt. Co. et al. vs. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Circuit Court, Ingham County July 1, 2020). The court in *Gavrilides* concluded that the insured could not demonstrate any direct physical loss to its property but, even if it had, the unambiguous virus exclusion would bar coverage. *See* Ex. B at 22 ("But, there is a virus exclusion that would also apply.").[5]

The same conclusion is true here. Plaintiffs' virus-related losses are excluded, and there is no coverage.

### 2. The Virus Is a Cause of Plaintiffs' Losses, Which Necessitates the Application of the Virus Exclusion

The Virus Exclusion applies so long as virus is *one* cause of loss; it need not be the sole cause of loss. The Policy provides: "[s]uch loss or damage is excluded ***regardless of any other cause or event that contributes concurrently or in any sequence to the loss***". Ex. A at 119 (emphasis added). This language is referred to as an anti-concurrent causation clause, and its purpose is to provide certainty to the parties as to coverage when there are multiple alleged causes of a loss. So long as one contributing cause is excluded, this anti-concurrent causation language ensures the loss is not covered.

Here, the virus is *the only* cause of loss alleged. However, even if the virus were just *a* cause of the loss, the Virus Exclusion would still bar coverage because of the anti-concurrent causation clause. *See, e.g.*, *Colella v. State Farm Fire & Cas. Co.*, 407 F. App'x 616, 622 (3d Cir. 2011) (anti-concurrent causation clause in insurance policy "negates the application" of the

---

[5] Transcript of Oral Argument on Defendant's Motion for Summary Disposition, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Circuit Court, Ingham County July 1, 2020). The final order is also attached hereto as Exhibit C.

state's causation law) (applying Pennsylvania law); *see Heller's Gas, Inc. v. Int'l Ins. Co. of Hannover Ltd.*, No. 4:15-CV-01350, 2017 WL 4119809, at *12–13 (M.D. Pa. Sept. 18, 2017) ("The explicit inclusion of this [anti-concurrent causation] language negates the default 'efficient proximate cause' doctrine under Pennsylvania law.").

Courts in this Circuit routinely apply anti-concurrent causation clauses and exclude coverage. For instance, in a 2006 Middle District of Pennsylvania case, the insurance policy at issue had an exclusion for losses caused by surface water, with a lead-in clause identical to the one in the Policy in this case: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *T.H.E. Ins. Co. v. Charles Boyer Children's Tr.*, 455 F. Supp. 2d 284, 288 (M.D. Pa. 2006), *aff'd,* 269 F. App'x 220, 223 (3d Cir. 2008). The court held that the unambiguous language of this provision barred coverage because surface water was one of the causes of the insured's loss. *Id.* at 298. The court determined that, whether a covered risk may have contributed to the loss was irrelevant in light of the anti-concurrent clause. *Id.*; *see also Baker v. Metro. Prop. & Cas. Ins. Co.,* No. 3:12-CV-01231, 2013 WL 5308196, at *11 (M.D. Pa. Sept. 19, 2013) (cause of loss is irrelevant when such a loss is excluded by anti-concurrent clause); *Brodzinski v. State Farm Fire & Cas. Co.*, No. CV 16-6125, 2017 WL 3675399, at *5 (E.D. Pa. Aug. 25, 2017) (coverage for claims for mold and rot prohibited by anti-concurrent clause preceding surface water exclusion).

Because the coronavirus undisputedly is at least *one* cause of Plaintiffs' losses, *see*, *e.g.*, Compl. ¶¶ 14, 44(1), 44(2), 44(6), there is no coverage under the Policy.

### D. Plaintiffs' Breach of Contract Claim Fails Because There is No Coverage for Plaintiffs' Claims Under the Policy

To assert a breach of contract claim under Pennsylvania law, a plaintiff must prove by a preponderance of the evidence (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). As detailed above, there is no coverage under the Policy; therefore, the insurance contract has not been breached, and Plaintiffs' second claim must be dismissed. *See Carosella & Ferry, P.C. v. TIG Ins. Co.*, 189 F. Supp. 2d 249, 254 (E.D. Pa. 2001) ("Given TIG's lack of obligation to cover the Bradleys' suit, TIG's decision to decline coverage over that suit is not a basis for breach of contract.").

### E. The Claim for Declaratory Relief Also Fails

Plaintiffs' first claim—for declaratory relief—is predicated on the assumption that the Policy provides coverage. Plaintiffs allege: "There is a dispute about whether Plaintiffs are entitled to coverage under the Policy for their losses sustained and to be sustained in the future. Accordingly, Plaintiffs are entitled to declaratory relief from this Court." Compl. ¶ 43; *accord* Compl. ¶ 44. Because there is no coverage under the Policy, Plaintiffs are not entitled to any of the declaratory relief sought. *See OneBeacon Am. Ins. Co. v. Urban Outfitters, Inc.*, 21 F. Supp. 3d 426, 442 (E.D. Pa. 2014), *aff'd*, 625 F. App'x 177 (3d Cir. 2015) (granting insurers' motion for summary judgement in declaratory relief action because there was no coverage under the insurance policy).

### F. The Injunctive Relief Claim for Speculative "Insurance Claims in the Future" Fails Too

Plaintiffs' final claim seeks to enjoin Hartford Casualty from denying coverage for "similar insurance claims in the future." *See* Compl. ¶ 61. This claim fails for a multitude of reasons.

First, hypothetical "insurance claims in the future" are too speculative to support injunctive relief, particularly given the Policy at issue expired on June 16, 2020. *See* Ex. A at 1; Compl. ¶ 5; *Buehl v. Beard*, 54 A.3d 412, 420 (Pa. Commw. Ct. 2012) ("[I]njunctive relief is not available to eliminate a remote possible future injury or invasion of rights"); *see also Curll v. Dairymen's Co-op. Sales Ass'n*, 132 A.2d 271, 274–75 (Pa. 1957) (observing "equity ordinarily will not enjoin an alleged harmful act where it is not reasonably certain of occurring").

Second, Plaintiffs cannot meet the high standard for obtaining an injunction. Plaintiffs are required to show: "[1] right to relief is clear, [2] that there is an urgent necessity to avoid an injury which cannot be compensated for by damages, and [3] the greater injury will result from refusing rather than granting the relief requested." *Singleton v. Lavan*, 834 A.2d 672, 674 (Pa. Commw. Ct. 2003). "Ultimately, the grant or denial of a permanent injunction will turn on whether . . . the party seeking the injunction established a clear right to relief as a matter of law." *Rohm & Haas Co. v. Lin*, 992 A.2d 132, 146 (Pa. Super. Ct. 2010). Injunctive relief must also be denied when there is an adequate remedy at law, that is, when damages will compensate for the injury. *Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge*, 102 A.3d 501, 505–06 (Pa. Super. Ct. 2014).

Plaintiffs cannot establish a clear right to relief. To the extent the unspecified future claims are "similar" to the present claim, there is no coverage because the Policy excludes losses caused directly or indirectly by a virus. Moreover, money damages would compensate Plaintiffs

adequately. Finally, there is no conduct to enjoin for claims "in the future" under this Policy, which expired on June 16, 2020. *See* Ex. A. at 1; Compl. ¶ 5. Thus, Plaintiffs are not entitled to injunctive relief and this claim should be dismissed too.

## IV. CONCLUSION

For the foregoing reasons and others appearing on the record, Defendant respectfully requests that the Court grant its motion to dismiss.

Dated this 28th day of July.

                                          Respectfully submitted,

By: /s/ Richard D. Gable, Jr.
    Richard D. Gable, Jr.
BUTLER WEIHMULLER KATZ CRAIG, LLP
Bar No.: 65842
1818 Market Street
Suite 2740
Philadelphia, Pennsylvania 19103
Phone: 267-507-1410
rgable@butler.legal

Sarah D. Gordon – *pro hac vice application pending*
sgordon@steptoe.com
John J. Kavanagh – *pro hac vice application pending*
jkavanagh@steptoe.com
Chris Han – *pro hac vice application forthcoming*
chan@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Phone: 202-429-8005

*Attorneys for Defendant Hartford Casualty Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss will be served upon counsel via the Court's Electronic Filing System.

Rhonda Hill Wilson
LAW OFFICE OF RHONDA HILL WILSON, P.C.
1500 John F. Kennedy Boulevard
Suite 820
Philadelphia, PA 19102
Phone: 215-972-0400
rhwilson@philly-attorney.com
*Attorney for Plaintiffs*

Christopher P. Leise
leisec@whiteandwilliams.com
Marc L. Penchansky
penchanskym@whiteandwilliams.com
WHITE AND WILLIAMS LLP
457 Haddonfield Rd Suite 400,
Cherry Hill, NJ 08002
Phone: 856-317-3646
*Attorney for Defendant USI Insurance Services, LLC*

        By: /s/ Richard D. Gable, Jr._____
          Richard D. Gable, Jr.

        BUTLER WEIHMULLER KATZ CRAIG, LLP
        State Bar No.: 65842
        1818 Market Street, Suite 2740
        Philadelphia, Pennsylvania 19103
        Phone: 267-507-1410
        rgable@butler.legal